UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SCOTT CRAWFORD                                          PLAINTIFF

VS.                               CIVIL ACTION NO. 3:17CV118TSL-RHW

HINDS COUNTY BOARD OF SUPERVISORS
AND HINDS COUNTY, MISSISSIPPI                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff Scott Crawford, who is disabled, brought the

present action against Hinds County, Mississippi, under Title II

of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*

(ADA), seeking damages and injunctive relief based on allegations

that the Hinds County Courthouse is not readily accessible to the

disabled because of numerous mobility-related architectural

barriers throughout the courthouse.  Initially, on the parties'

cross-motions for summary judgment, the court ruled that plaintiff

had standing to pursue the claims asserted in his complaint.

Prior to the scheduled trial of the case, plaintiff settled his

claim for damages and the case proceeded to trial on his claim for

injunctive relief.  Following a two-day trial, the court *sua*

*sponte* reconsidered its prior ruling and held that while plaintiff

had standing as to his claim for damages, he lacked standing to

seek injunctive relief.[1]  The court thus dismissed that claim.

---

[1]     Crawford v. Hinds Cty., Miss., No. 3:17CV118TSL-RHW, 2019WL

Plaintiff promptly moved for amended findings or, alternatively, a

new trial, pursuant to Federal Rules of Civil Procedure 52(b) and

59, respectively.  That motion is presently before the court for

decision.  The County has responded in opposition to the motion.

The court, having considered the motion and response, together

with the record in the case, concludes that plaintiff's motion

should be denied.

Plaintiff based standing in this cause on his status as an

ADA "tester."  The court's specific post-trial findings and

conclusions on the issue of standing to seek injunctive relief

were that, even assuming a plaintiff may have standing as a mere

tester, that is, one whose sole purpose in visiting an

establishment is to confirm ADA compliance, plaintiff herein was

still required to prove that at the time he filed suit, he

intended to return to the courthouse, if only to test for ADA

compliance; and, further, that while plaintiff claimed that he

intended to return as a tester, the evidence did not substantiate

this claim.  The court explained:

> Ultimately, [plaintiff] filed this lawsuit, not because
> he went to the courthouse as a "tester" to see what the
> County had done to address accessibility issues but
> because Nelson admitted in a phone call that the County
> had no plans to "fix the courthouse".  In sum, in the
> more than four years between the time the plaintiff
> first complained about the courthouse and the time he

5053451 (S.D. Miss. Oct. 8, 2019).

> filed suit, plaintiff returned to the courthouse only
> once – and that was not to test for compliance but for
> jury service.

Crawford v. Hinds Cty., Miss., No. 3:17CV118TSL-RHW, 2019 WL

5053451, at *7 (S.D. Miss. Oct. 8, 2019).

In the present motion, plaintiff asserts that the court's

finding in this regard was factually incorrect, as he, in fact,

went to the courthouse specifically as a tester twice before

filing suit, first on November 16, 2012, and then again on January

27, 2017.  Plaintiff states that he "did not go into great detail

(at trial) regarding these two visits because this Court had

already ruled that he had legal standing to pursue his claims",

and that had he known the court would *sua sponte* revisit the issue

of standing, he "would have discussed his prior visits in greater

detail, as well as elaborated upon the details of his future plans

to return to the Courthouse to test for ADA compliance."  He asks

that the court, pursuant to Federal Rule of Civil Procedure 52(b),

amend its findings to acknowledge these two visits and rule that

he has legal standing to pursue his claim for injunctive relief in

this case.  Alternatively, he asks that the court order a new

trial pursuant to Rule 59 for the purposes of exploring the issue

of standing.

Plaintiff's request that the court amend its findings to

acknowledge his November 2012 visit to the courthouse is not well-

taken inasmuch as the court already expressly acknowledged that

visit in its memorandum opinion and order.[1]  Further, to the

extent that plaintiff requests the court to amend its findings on

the basis of the record as it currently exists to acknowledge a

January 2017 visit to the courthouse, the motion is not well-taken

because, as discussed more fully *infra*, plaintiff has pointed to

no record evidence of any such visit.  For reasons that follow,

plaintiff's alternative request that the court order a new trial

for the purpose of exploring the standing issue will be denied, as

well.

   Pursuant to Rule 59(a), "[t]he court may, on motion, grant a

new trial on all or some of the issues-and to any party- ... after

a nonjury trial, for any reason for which a rehearing has

heretofore been granted in a suit in equity in federal court."

Fed. R. Civ. P. 59(a)(1).  This rule also provides that "[a]fter a

nonjury trial, the court may, on motion for a new trial, open the

judgment if one has been entered, take additional testimony, amend

---

[1]   See id. at *8 (reciting that after meeting with County
officials in November 2012, "plaintiff and several of his
colleagues from an advocacy group, Living Independence for
Everyone, accompanied by Williams, Brown and a couple of other
County officials, conducted a brief site survey at the
courthouse.").  The court's statement on page 20 of its opinion
that "through all of this, he never actually went to the
courthouse to check on the County's progress" refers to the period
of time after he and his colleagues conducted and submitted their
site survey.

findings of fact and conclusions of law or make new ones, and

direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2).

"Courts do not grant new trials unless it is reasonably clear that

prejudicial error has crept into the record or that substantial

justice has not been done, and the burden of showing harmful error

rests on the party seeking new trial." Sibley v. Lemarie, 184

F.3d 481, 487 (5th Cir. 1999) (quoting Del Rio Distributing, Inc.

v. Adolph Coors Co., 589 F.2d 176, 179 n.3 (5th Cir. 1979)).

Plaintiff contends that due to the court's *sua sponte*

reconsideration of its pretrial ruling in his favor on the

standing issue, he was deprived of the opportunity to put on

evidence at trial to establish standing. The Supreme Court has

held that "elementary principles of procedural fairness" require

that a district court, "rather than acting *sua sponte*", give the

plaintiff an opportunity to provide evidence of standing. Alabama

Legislative Black Caucus v. Alabama, 575 U.S. 254, 271, 135 S. Ct.

1257, 1269, 191 L. Ed. 2d 314 (2015) (citing Warth v. Seldin, 422

U.S. 490, 501–502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975))

(explaining that a court may "allow or [r]equire" a plaintiff to

supplement the record to show standing and that "[i]f, *after this*

*opportunity*, the plaintiff's standing does not adequately appear

from all materials of record, the complaint must be dismissed"

(emphasis added)). See also Ford v. NYLCare Health Plans of Gulf

5

Coast, Inc., 301 F.3d 329, 334 (5th Cir. 2002) (holding that if the court raises the issue of standing *sua sponte* without notice of the parties, "the plaintiff is deprived of a meaningful opportunity to address the court's concerns by identifying record evidence to satisfy the standing requirements."). Here, however, the court did not initially raise the issue of standing *sua sponte*. Rather, the issue was first presented by the parties on their cross-motions for summary judgment.

In its summary judgment motion, Hinds County argued, *inter alia,* that plaintiff lacked standing as a tester, first because the Fifth Circuit has not recognized tester standing in this context, and further because, even assuming standing can be based on one's status as a tester, plaintiff had not demonstrated standing as a tester, particularly because, "since moving to Hinds County in December of 2006, the Plaintiff has only visited the HCCC on four (4) known occasions, three (3) times for jury duty and one (1) time (in November 2012) to conduct a site survey of the HCCC to bring it into compliance." While the County acknowledged that plaintiff had alleged in his complaint that he planned to return to the courthouse to determine whether it had removed or modified barriers to create accessibility, it argued that there was, in fact, "no indication that Plaintiff will return to the [courthouse] to determine the modifications *as he has not*

*done so since November of 2012*, and has no reason to do so since

he is not directly involved in any way to bringing the HCCC into

compliance." (Emphasis added).

In his response to the County's motion, plaintiff asserted

that the County was "simply wrong" in arguing that he had failed

to demonstrate an intent to return, as he had submitted an

affidavit in which he "declared specific intentions to return to

the Courthouse".[2] He further challenged as "incorrect" the

County's assertion that he had visited the courthouse on only four

occasions, stating that in fact, he had been to the courthouse on

"several other occasions: he visited to register as a Hinds

County voter, he visited to support friends seeking a marriage

license, *he visited to test for ADA compliance*, and he visited in

furtherance of his advocacy work with the Hinds County Election

Commissioners (emphasis added)". Plaintiff pointed to specific

deposition testimony describing each of these visits, with the

exception of his alleged visit "to test for ADA compliance", for

which he merely cited the complaint. Likewise, in briefing on his

own partial summary judgment motion in which he asserted that he

had been to the courthouse "at least eight times over the last six

---

[2] In that affidavit, plaintiff declared, "I plan to visit the
Hinds County Courthouse . . . in the future as an ADA tester to
determine whether the barriers have been removed or ADA compliance
has been achieved by adequate accommodations."

7

years", he provided deposition testimony describing seven of those

visits, namely, 2012 jury duty, 2012 courthouse survey, 2015 jury

duty, 2018 jury duty, voter registration, support of friends

seeking a marriage license and a (post-complaint) meeting with the

Hinds County Election Commissioners.  But while he referenced a

"visit to test for ADA compliance", he offered no supporting

evidence but rather cited his complaint.  Of course, allegations

in the complaint are not evidence, and in the face of defendant's

challenge to plaintiff's standing, it was incumbent on him to

present evidence to prove standing.  See Ford, 301 F.3d at 332-33

("At the summary judgment stage, 'the plaintiff can no longer rest

on ... mere allegations, but must set forth by affidavit or other

evidence specific facts' validating his right to standing.")

(quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct.

2130, 2138, 119 L. Ed. 2d 351 (1992)).

Regretfully, when ruling on the parties' cross-motions for

summary judgment, the court in error concluded that plaintiff's

evidence -- specifically his declaration in which he attested that

he planned to visit the courthouse in the future -- was sufficient

to satisfy his burden to prove standing.  It was not.  In

retrospect, the court should have discerned then, as it came to

recognize upon further reflection, that the record evidence was

not adequate to support summary judgment in plaintiff's favor on

the standing issue.  The court is now convinced that plaintiff's

mere declaration of an intent to return was insufficient to

sustain his burden, especially when his actions, as indicated by

the summary judgment evidence, demonstrated, not a lack of

interest in ADA compliance, but a lack of intent to actually

return to the courthouse, whether to use the facility or any

programs offered or provided at the facility or to test for ADA

compliance.

The court cannot say with certainty that it would have

granted summary judgment for the County had the court engaged in a

more exacting and thoughtful consideration of the parties'

arguments and evidence when ruling on their cross-summary judgment

motions.  However, in the court's view, it would have been

warranted in doing so.  The summary judgment evidence of

plaintiff's pre-suit actions, even when viewed in his favor,

belied any genuine intent on his part to return to the courthouse

for any purpose.  In particular, the evidence of record

established that in the four-plus years from the fall of 2012,

when plaintiff first visited the courthouse for jury service and

began advocating for removal of barriers to accessibility, to the

time he filed suit in February 2017, he visited the courthouse

only once, and that was in response to a June 2015 jury summons.[3]

In light of that evidence, plaintiff's mere declaration in an

affidavit that he intended to return at some unspecified time in

the future, without some further explanation of this claimed

intent, was not adequate to create an issue for trial.  See Lujan,

504 U.S. at 564, 112 S. Ct. 2130 ("affiants' profession of an

'inten[t]' to return to the places they had visited before … is

simply not enough.  Such 'some day' intentions—without any

description of concrete plans, or indeed even any specification of

when the some day will be—do not support a finding of the 'actual

or imminent' injury that our cases require.").

   That said, even though summary judgment for the County would

have been warranted, the court might nevertheless have denied the

County summary judgment on the standing issue.  See Firman v. Life

Ins. Co. of N. Am., 684 F.3d 533, 538 (5th Cir. 2012) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct.

2505, 2513, 91 L. Ed. 2d 202 (1986)) ("Even if the standards of

Rule 56 are met, a court has discretion to deny a motion for

summary judgment if it believes that 'the better course would be

to proceed to a full trial.'").  The fact is, however, the court

---

[3]   It bears repeating that there was no evidence in the summary
judgment record of any visit to the courthouse in January 2017.

did not raise the issue of standing *sua sponte* in the first instance; the parties did.

Irrespective of how the court should have ruled or might have ruled, given how the court did rule, at the time of trial, plaintiff was obviously justified in his understanding that, the issue of standing having been decided in his favor, he had nothing more to prove on that front. Nevertheless, plaintiff has not persuaded the court that it should reopen the record to allow him to put on additional evidence of standing.

As set forth in detail in the court's post-trial memorandum opinion and order, plaintiff testified at trial about three visits to the courthouse in response to jury summonses (in 2012, 2015 and 2018); a November 2012 visit to the courthouse to conduct a site survey in the wake of his October 2012 jury service; attending a meeting of the Hinds County Elections Commission in May 2018; and registering to vote at the courthouse in 2006 or 2007, after moving back to Jackson. After giving all this testimony, his attorney asked him this: "Other than the three times you were selected for jury duty and the time you registered to vote, *have you ever been to the Hinds County Courthouse*?" (Emphasis added). His response was: "Yes. Once, years ago, I accompanied some friends who were applying for a marriage license, and I joined them to support them and take photographs for them." He did not

11

mention the alleged January 2017 "tester" visit in response to this question, or for that matter, at any time during his trial testimony.

Plaintiff argues on the present motion that he "did not go into *great detail*" at trial regarding his alleged November 2012 and January 2017 tester visits to the courthouse because he did not know that standing was at issue, and he states that had he known this, he "would have discussed his prior visits *in greater detail*". The fact is, though, that while he did testify in at least some detail about his 2012 site survey visit, he did not so much as allude to a January 2017 visit to the courthouse. To the contrary, as stated, when specifically asked about all the times he had "ever been to the Hinds County Courthouse", he did not disclose this alleged visit. Plaintiff would not have thought it necessary to offer evidence at trial to prove standing, but he presumably would have thought it necessary to provide full and accurate answers to questions posed to him.

Again, despite taking the position in his briefs and arguments to the court that he brought this action as a tester, plaintiff made no mention at trial or during summary judgment briefing of any alleged tester visit to the courthouse just three weeks before filing suit. This omission is particularly notable, given plaintiff's explanation at trial for why he finally decided

12

to file suit in February 2017, despite having known for years of

the multitude of barriers to accessibility at the courthouse.

Plaintiff testified:

> This [lawsuit] was a last resort, and I only did this
> because I had a conversation with the new ADA
> coordinator.  They hired a new ADA coordinator at some
> point, Mr. Nelson.  And I had a phone conversation with
> him.  And in that conversation, he basically told me
> that there were no immediate plans to fix the
> courthouse, and that's when I filed suit.

At this point, the court would be remiss if it failed to

acknowledge that time records prepared by plaintiff's attorneys

which the court has reviewed in connection with plaintiff's

pending motion for an award of attorneys' fees, do reflect a visit

to the courthouse by plaintiff on January 27, 2017.  Those

records, however, show much more than just the visit itself.  To

the point, it appears from the records that plaintiff contacted

counsel about filing this lawsuit on December 19, 2016, more than

a month before the alleged "tester" visit.  Following that initial

contact, counsel immediately began preparations for litigation.

These preparations included, *inter alia*, the following:  January

2, 2017, review of e-mail from plaintiff regarding his "discussion

13

with Hinds County ADA coordinator" (presumably the discussion

which prompted him to pursue litigation); January 9, email from

counsel to plaintiff "re: final walkthrough of facility before

drafting lawsuit"; January 10, review of emails from plaintiff

"re: excuses from ADA Coordinator, arranging walk-through to

confirm that violations have not been remedied"; January 18,

"research on standing"; January 20, email and phone call to

plaintiff "to schedule informal inspection of courthouse"; and

January 27, "meeting with client to walk through Hinds County

Circuit Court[house]".  These records suggest that while plaintiff

did visit the courthouse on January 27, 2017, he did so, not for

the purpose of *testing* for compliance, but rather *with his*

*attorneys* for the purposes of *confirming*, prior to filing the

complaint in this cause, that the violations he had previously

identified had not, in fact, been remedied.  In the court's view,

the requirement of standing would be meaningless if this is a

sufficient basis on which to predicate a finding of standing.

Whatever else it may cover, the concept of tester standing cannot

be so expansive as to include a prospective plaintiff's merely

"confirming" the continued presence of known or suspected ADA

violations by visiting the facility with his attorneys en route to

the federal courthouse to file his ADA complaint.

Accordingly, for the foregoing reasons, it is ordered that

14

plaintiff's motion for amended findings or, alternatively, a new trial, is denied.

SO ORDERED this the 6th day of April, 2020.

/s/TOM S. LEE_____
UNITED STATES DISTRICT COURT JUDGE